IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TAURUS TYRONE NOLES § | | |
| TDCJ-CID #1378506 § | | |
| v. § | | C.A. NO. C-09-117 |
| § | | |
| MAJOR AURELIO AMBRIZ § | | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff, Taurus Tyrone Noles, claims that defendant failed to protect him from an assault by other inmates on May 17, 2009, and he seeks compensatory damages. (D.E. 1). Defendant Aurelio Ambriz moves for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies, and in the alternative, on the grounds of qualified immunity, arguing that plaintiff cannot establish that he knew of an excessive risk to plaintiff's safety, and then ignored that risk, and, even if he was aware of a risk, that his actions were reasonable under the circumstances of this case. (D.E. 23).

For the reasons stated herein, it is respectfully recommended that the Court grant defendant's motion for summary judgment and dismiss plaintiff's claims with prejudice for failure to exhaust administrative remedies. However, if the Court declines to dismiss the action on exhaustion grounds, it is respectfully recommended that the Court deny defendant's motion for summary judgment as a

fact issue exists as to the reasonableness of defendant's actions, such that summary judgment in his favor is not appropriate. Additionally, if the Court declines to dismiss the action on exhaustion grounds, it is respectfully recommended that defendant is entitled to Eleventh Amendment immunity for any damages in his official capacity.

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division, and is currently confined at the Eastham Unit in Lovelady, Texas, although his complaint concerns events that occurred while he was housed at the McConnell Unit in Beeville, Texas. He filed his original complaint on May 29, 2009, alleging that Major Aurelio Ambriz failed to protect him from a May 17, 2009 inmate assault, and that Executive Director Brad Livingston was also liable for the attack by virtue of his position in charge of the Texas prison system, including the McConnell Unit. Following a June 25,

2009 Spears[1] hearing, plaintiff's claims against Brad Livingston were dismissed, while his failure to protect claim against Major Ambriz was retained. (D.E. 14).

On August 10, 2009, defendant filed his answer and raised the defense of qualified immunity. (D.E. 17). On December 8, 2009, defendant filed the instant motion for summary judgment. (D.E. 23). Plaintiff has not filed a summary judgment response.[2]

### III.  SUMMARY JUDGMENT EVIDENCE

In support of his motion for summary judgment, defendant Ambriz offers relevant portions of plaintiff's grievance records for the period of May 2009 through August 10, 2009, and a "no records affidavit." (D.E. 23, Exs. A & B).

The evidence establishes the following facts:

**A.    The Events Leading To The May 17, 2009 Assault On Plaintiff.[3]**

Prior to the events at issue in this case, plaintiff was convicted of shooting an individual who had known ties to the Bloods gang.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

[2] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

[3] The underlying facts of the assault giving rise to plaintiff's claims against defendant are taken from plaintiff's original complaint and his testimony at the Spears hearing. See Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Plaintiff arrived on the McConnell Unit in 2006. At the end of 2007, or the beginning of 2008, a cousin of the individual who plaintiff shot, and also a Bloods gang member, arrived on the McConnell Unit. This cousin, along with other members of the Bloods, began threatening plaintiff's life.

In June or July of 2008, plaintiff filed a life in danger complaint. He went before a Unit Classification Committee ("UCC") and requested a transfer. However, at the time he filed the life in danger claim, he was already housed in close custody, so his claim was denied. In August 2008, plaintiff was released to general population.

In May 2009, the cousin and other Bloods resumed threatening plaintiff. On May 6, 2009, plaintiff sent Major Ambriz an I-60 informing him that he had been threatened by the Bloods. He requested to be transferred or placed in protective custody. Plaintiff did not receive a response to his I-60, so on May 15, 2009, he filed a Step 1 grievance addressed to Major Ambriz claiming that he did not feel safe in 3-Building.

On May 17, 2009, plaintiff was attacked in the 3-Building recreation yard. He was attacked from behind, but believes there were three or four inmates involved in the attack. He was punched and kicked, and now suffers from migraine headaches, which he did not have prior to the assault. Following the

assault, plaintiff was taken to the infirmary. Thereafter, he was returned to his regular housing.

On May 18, 2009, the night sergeant on duty heard known members of the Bloods threaten to kill plaintiff. He was then moved that night to some type of protective housing.

On June 9, 2009, plaintiff went before a UCC, and it was recommended that he be transferred. On June 19, 2009, he was transferred from the McConnell Unit.

**B.  Plaintiff's Grievance Record.**

On April 30, 2009, plaintiff filed Grievance No. 2009144174, appealing a disciplinary decision. (D.E. 23, Ex. A at 10-11). That grievance was denied, id. at 11, and on June 3, 2009, plaintiff filed a Step 2 appeal. Id. at 8-9. In an August 3, 2009 response, Step 2 Grievance No. 2009144174 was denied. Id. at 9.

In Grievance No. 2009157105, received by McConnell Unit personnel on May 22, 2009, plaintiff complained that on May 18, 2009, his personal property was wrongfully confiscated and he requested that it be returned. Id. at 3.[4] Plaintiff did not file a Step 2 appeal of Grievance No. 2009157105.

---

[4] The record does not contain the second page to this grievance, and therefore, the prison official's response to this grievance is not available.

5

On May 14, 2009, plaintiff filed a Step 1 grievance, Grievance No. 2009153170, complaining that he had submitted an I-60 to Major Ambriz, relating that his life was in danger, but he did not receive a response. Id. at 6-7. He complained further that he had then tried to file a life in danger complaint on May 13, 2009, but the desk officer thought he "was playing." Id. at 6. In a response dated June 6, 2009, Warden Jackson concluded that "[t]here was an investigation conducted into your grievance. You were reviewed by UCC on 5-22-09. UCC recommended you for a unit transfer due to being a victim of assault. At this time you are pending a decision from SCC." Id. at 7. Plaintiff did not file a Step 2 appeal of Grievance No. 2009153170.

On July 6, 2009, while at the Eastham Unit, plaintiff filed Grievance No. 2009187351, complaining that he has high blood pressure and that working in the sun was aggravating his medical condition. Id. at 4-5. His grievance was denied, and plaintiff did not file a Step 2 appeal of this matter. Id.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.  DISCUSSION

**A.    Plaintiff Failed To Exhaust His Administrative Remedies.**

Defendant moves for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.  (D.E. 23, at 4-5).

In the Prison Litigation Reform Act, Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a

precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 92-93 (2006).  An inmate's failure to exhaust is an affirmative defense that must be raised by defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007).

The TDCJ currently provides a two-step procedure for presenting administrative grievances.[5]  A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies.  See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358).

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at 94.  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

---

[5] Step 1 requires the prisoner to submit an administrative grievance at the institutional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. Id.  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ. Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director. Id.

Defendant argues that plaintiff has failed to exhaust his administrative remedies because he did not file a Step 1 or Step 2 grievance raising his failure to protect claim against Major Ambriz.

Plaintiff's grievance records demonstrate that, although he filed three Step 1 grievances between April 2009 and August 10, 2009 while at the McConnell Unit, only one of those grievances, Grievance No. 2009153170, dated May 14, 2009, concerned his safety and his allegation that he previously submitted an I-60 to Major Ambriz, but did not receive a response. He did not file a Step 2 appeal of Grievance No. 2009153170. Based on this fact alone, even if this grievance had notified prison officials of plaintiff's claims, it is not sufficient for exhaustion purposes because no Step 2 was filed. See Johnson, 385 F.3d at 515.

Furthermore, the assault occurred on May 17, 2009. Following the assault, plaintiff did not file a grievance raising the claims that he raises in this lawsuit: that he advised Major Ambriz on May 6 that he was being threatened by members of the Bloods and that Major Ambriz ignored his requests to be protected. Thus, the uncontroverted evidence establishes that plaintiff did not exhaust his administrative remedies.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not

further the purposes of the Prison Litigation Reform Act. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam) (citing McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992)). For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; accord Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir. 1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Underwood, 151 F.3d at 296; accord Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

    Here, there is no allegation that plaintiff was denied access to the grievance system or that he did not have the grievance forms or understand how the grievance procedure worked. To the contrary, plaintiff's grievance records demonstrate that he was aware of the grievance procedure and familiar with the process to raise his claims. Moreover, in failing to file a response to defendant's summary judgment motion, plaintiff has failed to come forward to argue that exhaustion should be excused. Thus, it is respectfully recommended that the Court grant defendant's motion for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies.

**B.     Defendant Is Not Entitled To Qualified Immunity.**

In the alternative, Major Ambriz moves for summary judgment on the grounds of qualified immunity. (D.E. 23, at 5-8).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). "First, he must claim that the defendants committed a constitutional violation under current law." Id. (citations omitted). "Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then

determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at __, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

### 1. Step 1 – constitutional violation.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

Plaintiff claims that he informed Major Ambriz prior to the assault – in a May 6, 2009 I-60 request – that he was being threatened by the Bloods and that he believed his life was in danger, but that he never received a response from defendant. In support of his summary judgment motion, defendant offers the affidavit of the Eastham Unit's warden, David Sweetin, who testifies that he has searched Eastham's records and that there is no record of plaintiff filing an I-60 request to official between April 2009 to June 2009. (D.E. 23, Ex. B). However,

this finding is to be expected because plaintiff was *not* on the Eastham Unit during that time, but was still at the McConnell Unit.  Indeed, Warden Sweetin's affidavit has no relevance to the issues in this case.

Plaintiff alleges that he filed the I-60 while at the McConnell Unit, and that he gave it to defendant.  Defendant does not offer any evidence to refute this assertion.  Thus, plaintiff's allegations establish that he was at risk of harm from threats of the Bloods, and that he alerted defendant via an I-60 complaint. Accordingly, it is respectfully recommended that he has properly asserted a constitutional violation by Major Ambriz based on his allegation of deliberate indifference to his health and safety.

### 2. Step 2 - objective reasonableness.

In the context of an Eighth Amendment deliberate indifference claim, whether a defendant's actions are objectively reasonable depends on whether the defendant both knew of the risk and failed to take reasonable measures to alleviate it.  Farmer, 511 U.S. at 847.  The Fifth Circuit has explained that "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference."  Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quoting Farmer, 511 U.S. at 838). Moreover, "negligence is insufficient to support a finding of liability."  Adames v.

Perez, 331 F.3d 508, 514 (5th Cir. 2003). Prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety *and* fail to respond properly. Johnson, 385 F.3d at 524. "[T]here is no liability if the official 'responded reasonably to the risk, even if the harm ultimately was not averted.'" Id. (quoting Farmer, 511 U.S. at 844). When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically. Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir. 2001). Thus, "[w]hen the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id.

If, as alleged by plaintiff, Major Ambriz received the I-60 but then failed to take any action concerning the threats made by the Bloods against plaintiff, his actions would not be reasonable. Here, defendant does not offer an affidavit from any McConnell Unit official establishing that no I-60's were filed by plaintiff during that time period. Furthermore, defendant does not attempt to refute plaintiff's assertions in his own affidavit or pleadings. Thus, a material issue of fact exists as to whether Major Ambriz actually received the I-60 request, and, if he did, his actions thereafter. Thus, a material issue of fact exists whether defendant's

16

actions were objectively reasonable. Accordingly, it is respectfully recommended that defendant's motion for summary judgment based on qualified immunity be denied.

### C. Defendant Is Entitled To Immunity Against Monetary Damages In His Official Capacity Based On The Eleventh Amendment.

Defendant also moves for summary judgment on the grounds that plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment. (D.E. 23, at 8-9).

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). The Fifth Circuit has consistently held that the Eleventh Amendment precludes awards of money damages against persons sued in their official capacities. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (citing Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998); Aguilar v. TDCJ, 160 F.3d 1052, 1054 (5th Cir. 1998)).

To the extent plaintiff is suing defendant in his official capacity for money damages, those claims are barred by the Eleventh Amendment. Should the Court decline to dismiss this case for failure to exhaust, it is respectfully recommended

that defendant be granted summary judgment in his favor on those claims for money damages against him in his official capacity.

## VI. RECOMMENDATION

There is no genuine issue of a material fact that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e prior to filing suit and, in failing to respond to defendant's summary judgment motion, plaintiff has not alleged any circumstances to excuse exhaustion. Thus, it is respectfully recommended that defendant's motion for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies be granted, and plaintiff's claims dismissed.

Should the Court not grant defendant's motion to dismiss for failure to exhaust, it is respectfully recommended that the Court deny defendant's motion for summary judgment based on qualified immunity. A genuine issue of material fact exists as to whether defendant was aware of a serious risk to plaintiff's safety prior to the assault, and ignored that risk, such that summary judgment is not appropriate. As to plaintiff's claims for money damages against defendant in his official capacity, it is respectfully recommended that those claims be dismissed

with prejudice as barred by the Eleventh Amendment.

    Respectfully submitted this 25th day of February 2010.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).